UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

HALAH FADHL MOSED,

        Plaintiff,

v.

COMMISSIONER OF
SOCIAL SECURITY,

        Defendant.

_____/

Case No. 2:14-cv-14357
District Judge Mark A. Goldsmith
Magistrate Judge Anthony P. Patti

## RECOMMENDATION TO GRANT DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (DE 15) AND TO DENY PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT (DE 13)

**I.**    **RECOMMENDATION**: For the reasons that follow, it is

**RECOMMENDED** that the Court **GRANT** Defendant's motion for summary

judgment (DE 15), **DENY** Plaintiff's motion for summary judgment (DE 13), and

**AFFIRM** the Commissioner's decision.

**II.**    **REPORT**

       Plaintiff, Halah Fadhl Mosed, brings this action under 42 U.S.C. §§ 405(g)

and 1383(c)(3) for review of a final decision of the Commissioner of Social

Security  ("Commissioner") denying her applications for social security disability

2:14-cv-14357-MAG-APP   Doc # 18   Filed 01/22/16   Pg 2 of 22   Pg ID 1051

insurance children's benefits and supplemental security income.[1]  This matter is before the United States Magistrate Judge for a Report and Recommendation on Plaintiff's motion for summary judgment (DE 13), the Commissioner's memorandum in opposition and cross motion for summary judgment (DE 15) and the administrative record (DE 10).

### A.    Background

Plaintiff filed her applications for benefits on April 5, 2010, alleging that she has been disabled since June 26, 1992.  (R. at 15.)  Plaintiff's applications were denied and she sought a *de novo* hearing before an Administrative Law Judge ("ALJ").  ALJ Oksana Xenos held a hearing on June 7, 2011 and subsequently determined that Plaintiff was not disabled within the meaning of the Social Security Act.  (R. at 15-49.)  On November 14, 2011, the Appeals Council denied Plaintiff's request for review and she timely commenced an action in this Court. (R. at 1-4.)   *See Mosed v. Comm'r of Soc. Sec.*, No. 2:11-cv-15584.  On August 10, 2012, the parties stipulated to remand the matter back to the agency.  (R. at 563.)  On remand, the ALJ was required to:

- Further evaluate the claimant's subjective complaints and provide rationale in accordance with the disability regulations pertaining to evaluation of symptoms (20 C.F.R. 404.1529 and 416.929) and Social Security Ruling 96-7p.

---

[1] The Social Security Act provides for the payment of disabled child's insurance benefits if, as here, the claimant is 18 years old or older and has a disability that began before he or she turned 22.  20 C.F.R. § 404.350(a)(5).

- Give further consideration to the claimant's maximum residual functional capacity during the entire period at issue and provide rationale with specific references to evidence in the record in support of assessed limitations. . . . As appropriate, the Administrative Law Judge may request the treating and nontreating sources to provide additional evidence and/or further clarification of the opinions and medical source statements about what the claimant can still do despite the impairments.

- Further, if necessary, obtain evidence from a medical expert to clarify the nature and severity of the claimant's impairments . . . .

- Obtain supplemental evidence from a vocational expert to clarify the effect of the assessed limitations on the claimant's occupational base . . . .

(R. at 567.)   Accordingly, ALJ Xenos held another hearing on October 9, 2013.

(R. at 505-531.)  The ALJ again determined that Plaintiff was not disabled within

the meaning of the Social Security Act.  (R. at 491-499.)  On October 10, 2014, the

Appeals Council denied Plaintiff's request for review, and ALJ Xenos' decision

became the Commissioner's final decision.  Plaintiff then timely commenced the

instant action.

## B.    Plaintiff's Medical History

 On July 9, 1992, four days after Plaintiff was born, pediatrician Giora Ben-

Shachar, M.D., diagnosed her with tetralogy of Fallot[2] requiring surgery to repair

---

[2] Tetralogy of Fallot is a congenital heart defect caused by a problem with the heart's structure at birth.  National Heart, Lung, and Blood Institute, *What is Tetralogy of Fallot?*, https://www.nhlbi.nih.gov/health/health-topics/topics/tof (last visited January 14, 2016).

the defect.  (R. at 280-81.)  Plaintiff underwent a corrective repair surgery on May 20, 1993.  (R. at 274.)  On September 3, 1993, Dr. Ben-Shachar advised Plaintiff and her family that she should be allowed to continue with regular activities for her age.  (R. at 270.).  At her next visits with Dr. Ben-Shachar in March and October of 1995, he reported that she was doing "quite well."  (R. at 268 and 266.)

Plaintiff underwent a second surgery on February 12, 1998 to correct an increase in pulmonic regurgitation, cardiac defects, and tiredness.  (R. at 253-54.)  In October of 1998, however, Plaintiff reported increasing tiredness and pulmonic regurgitation.  (R. at 248-49.)  Dr. Ben-Shachar noted that she was stable.  (Id.)

Plaintiff saw Dr. Ben-Shachar and John M. Clark, M.D., in 2000 through 2003.  During that time, despite some heart rhythm disturbances, the doctors felt she was doing very well and her heart was functioning normally.  (R. at 232-239, 911, and 918.)

Plaintiff saw cardiologist T.P. Singh, M.D., on January 19, 2004.  (R. at 367-368.)  Dr. Singh found mild to moderate pulmonary stenosis and recommended that Plaintiff perform physical activities "as tolerated" and follow up in a year. (R. at 368.)  Plaintiff saw Daniel R. Turner, M.D., on January 31, 2005, and complained of fatigue.  (R. at 343.)  Dr. Turner began Plaintiff on a regimen of daily Aspirin and recommended follow up in one year.  (R. at 345.)  He further

4

noted that conduit replacement would be required in the future.  On December 31,
2007, Plaintiff underwent an unremarkable exercise stress test.  (R. at 434.)

In 2008, Plaintiff reported taking regular gym classes and playing sports.
(R. at 212.)  In 2009, Dr. Singh and Kingsley Okonkwo, M.D., recommended that
Plaintiff participate in low-intensity sports only, due to an examination revealing
mild cardiac disturbances.  (R. at 181-83.)

In August of 2010, Plaintiff reported excessive tiredness and occasional
dizziness.  (R. at 401.)   She underwent an echocardiogram which revealed a
moderate heart defect, for which Dr. Singh recommended catheterization and
implantation of a Melody valve.[3]  (R. at 844.)  On September 2, 2011, Srinath
Gowda, M.D., performed the Melody valve procedure.  (R. at 779-781.)  At a
follow-up visit on September 12, 2011, Dr. Gowda considered the valve
replacement successful, despite a mild degree of obstruction.  (R. at 772.)  From
2012 through 2013, Plaintiff presented for follow-up with Dr. Gowda, but did not
report any issues, other than one instance of chest discomfort, dizziness, and
anxiety due to staying up all night to study for a test.  (R. at 692.)

---

[3] The FDA describes a "Melody valve" as "an artificial heart valve made from the
jugular vein valve of a cow that is sewn into a small metal frame" that is used to
replace a narrowed or leaky conduit.  U.S. Food and Drug Administration, *Melody
Transcatheter Pulmonary Valve*, http://www.fda.gov/MedicalDevices/
ProductsandMedicalProcedures/DeviceApprovalsandClearances/Recently-
ApprovedDevices/ucm431866.htm (last visited January 14, 2016).

C.    **Hearing Testimony**

1.    **Plaintiff's Testimony**

At the October 9, 2013 administrative hearing, Plaintiff testified that she lived with her mom and brother. (R. at 515 and 517.)  She indicated that she did not help with any of the chores at home, other than picking up her plate.  (R. at 517.)  Plaintiff testified that she did not have trouble getting along with other people.  (R. at 518.)  Nor did she have trouble attending to her own personal needs. (Id.)  She noted that she liked to watch television, read magazines, and that she went shopping for clothes and personal items every few months.

Plaintiff testified that she believed she was disabled because she struggled with walking and lifting due to her multiple heart surgeries.  (R. at 515.)  She indicated that she could walk for about ten minutes before getting tired and could not lift more than a gallon of milk.  (R. at 516.)  She testified that she had no trouble with her hands and was good on a computer and with texting.  (R. at 516-517.)  She indicated that she was always tired and had to take a nap every day.  (R. at 522-23.)

Plaintiff testified that she previously took classes at the Henry Ford Community College, but at the time of the hearing she was enrolled at the Wayne County Community College.  (R. at 512.)  She indicated that she was only taking one class at that time, but had taken four classes the prior semester.  (R. at 512.)

The most classes she had ever taken during a semester was five.  (R. at 526.)

Plaintiff explained that she had reduced her class-load because she could not "keep

up with all the stress and work."  (R. at 513.)  In addition to her classes, Plaintiff

worked at the college helping prospective students to apply.  (R. at 513.)  She

explained that she was able to work three or four hours per day, with a ten minute

break.  (R. at 520.)  Plaintiff indicated that she missed class "multiple times"

because of her fatigue.  (R. at 524.)  She testified that her high school grade point

average ("GPA") was 2.6 or 2.7 and her college GPA was 3.5.  (R. at 515.)

## 2.    Vocational Expert Testimony

Harry Cynowa testified as the Vocational Expert ("VE") at the

administrative hearing.  (R. at 528-531.)  The ALJ asked the VE a series of

hypotheticals.  First, she asked the VE to determine if a hypothetical individual

who was a high school graduate with some college education and past work

experience could perform work at the sedentary exertional level with the following

restrictions:

> [The hypothetical individual] [c]annot climb ladders, ropes, or
> scaffolds; can occasionally climb stairs and ramps; should avoid
> concentrated exposure to fumes, odors, noxious gases, and dust; and
> also requires a sit/stand at will option at the work station.

(R. at 529.)   Based on this hypothetical, the VE identified three positions the

hypothetical individual could perform: 1) information clerk or greeter, with 4,000

positions in the region and 250,000 nationally; 2) security monitor, with 1,500

7

positions in the region and 120,000 nationally; and 3) a hand packager, with 3,250 positions in the region and 200,000 nationally. (Id.)

Second, the ALJ asked the VE to determine if there were jobs in the local and national economy that the above hypothetical individual could perform if he or she was limited to simple, repetitive work with minimal changes in the work setting and occasional contact with the general public, coworkers, and supervisors. (R. at 529-530.)  The VE testified that the information clerk or greeter position would be precluded, but that the hypothetical individual could perform the hand packager and security monitor positons.  In addition, the VE identified the position of visual inspector or sorter, with 1,500 positions in the region and 120,000 nationally, as other work available to the individual.  (R. at 530.)

Finally, the ALJ asked if there was work available for the hypothetical individual who, "due to frequent episodes of fatigue, shortness of breath, and the combination of other impairments," would be off-task up to twenty-percent of the workday and unable to sit, stand, and/or walk a total of eight hours, five days per week.  (R. at 530.)  The VE testified that such a limitation would be work preclusive.  (Id.)

## D.  THE ADMINISTRATIVE DECISION

On November 7, 2013, the ALJ issued his decision.  (R. at 491-499.)  At Step 1 of the sequential evaluation process,[4] the ALJ found that Plaintiff had not engaged in substantially gainful activity since her birthdate of June 26, 1992.  (R. at 493.)

At Step 2, the ALJ found that Plaintiff had the severe impairment of history of tetralogy of Fallot.  (R. at 494.)

At Step 3, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments described in 20 C.F.R. Part 404, Subpart P, Appendix 1.  (Id.)

---

[4] Social Security Regulations require ALJs to resolve a disability claim through a five-step sequential evaluation of the evidence.  *See* 20 C.F.R. §404.1520(a)(4).  Although a dispositive finding at any step terminates the ALJ's review, *see Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007), if fully considered, the sequential review considers and answers five questions:

1.    Is the claimant engaged in substantial gainful activity?
2.    Does the claimant suffer from one or more severe impairments?
3.    Do the claimant's severe impairments, alone or in combination, meet or equal the criteria of an impairment set forth in the Commissioner's Listing of Impairments, 20 C.F.R. Subpart P, Appendix 1?
4.    Considering the claimant's residual functional capacity, can the claimant perform his or her past relevant work?
5.    Considering the claimant's age, education, past work experience, and residual functional capacity, can the claimant perform other work available in the national economy?

*See* 20 C.F.R. §404.1520(a)(4); *see also Henley v. Astrue*, 573 F.3d 263, 264 (6th Cir. 2009); *Foster v. Halter*, 279 F.3d 348, 354 (6th Cir. 2001).

9

Prior to Step 4 of the sequential process, the ALJ evaluated Plaintiff's residual functional capacity ("RFC")[5] and determined that Plaintiff had the capacity to perform a range of sedentary work with the following limitations: a sit/stand option at will at the workstation, cannot climb ladders, ropes, or scaffolds, can only occasionally climb stairs and ramps, and should avoid concentrated exposure to dust, fumes, noxious gases, and odors. (R. at 494.) The ALJ concluded that Plaintiff had no past relevant work. (R. at 497.)

At Step 5, the ALJ concluded that Plaintiff was capable of performing other jobs that exist in significant numbers in the national economy. (R. at 498.) She therefore concluded that Plaintiff was not disabled under the Social Security Act.

### E.  STANDARD OF REVIEW

The District Court has jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g). When reviewing a case under the Social Security Act, the Court "must affirm the Commissioner's decision if it 'is supported by substantial evidence and was made pursuant to proper legal standards.'" *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. at 2009) (quoting *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. at 2007)); *see also* 42 U.S.C. § 405(g) ("[t]he findings of the Commissioner of Social Security as

---

[5] The claimant's "residual functional capacity" is an assessment of the most the claimant can do in a work setting despite his or her physical or mental limitations. 20 C.F.R. §404.1545(a); *Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 239 (6th Cir. 2002).

to any fact, if supported by substantial evidence, shall be conclusive . . . .").  Under this standard, "substantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers*, 486 F.3d at 241 (quoting *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994)).  In deciding whether substantial evidence supports the ALJ's decision, the court does "not try the case *de novo*, resolve conflicts in evidence or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Rogers*, 486 F.3d at 247 ("It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant.").  Furthermore, the claimant "has the ultimate burden to establish an entitlement to benefits by proving the existence of a disability." *Moon v. Sullivan*, 923 F.2d 1175, 1181 (6th Cir. 1990).

Although the substantial evidence standard is deferential, it is not trivial. The Court must "'take into account whatever in the record fairly detracts from [the] weight'" of the Commissioner's decision. *TNS, Inc. v. NLRB*, 296 F.3d 384, 395 (6th Cir. 2002) (quoting *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 487 (1951)).  Nevertheless, "if substantial evidence supports the ALJ's decision, this Court defers to that finding 'even if there is substantial evidence in the record that would have supported an opposite conclusion.'" *Blakley v. Comm'r of Soc. Sec.*,

11

581 F.3d 399, 406 (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997));

*see also* 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security

as to any fact, if supported by substantial evidence, shall be conclusive . . . .").

Finally, even if the ALJ's decision meets the substantial evidence standard, "'a

decision of the Commissioner will not be upheld where the SSA fails to follow its

own regulations and where that error prejudices a claimant on the merits or

deprives the claimant of a substantial right.'" *Rabbers*, 582 F.3d at 651 (quoting

*Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007)).

## F. ANALYSIS

At the beginning of her brief, Plaintiff identifies three statements of error.

First, she contends that the ALJ erred by failing "to evaluate and consider [her]

subjective complaints and testimony on her ability to work." (DE 13 at 5.)  In the

body of the brief, she clarifies that what she means by this is that the ALJ erred by

"not ordering a psychological exam . . . given the *lack of support for the claimant's

symptoms in the record*," specifically failing to further develop the statements she

made in a letter she provided to the Commissioner, but which she "[n]owhere in

the medical documentation . . . ever reported." (Id. at 15-16 (emphasis added)).

Second, she argues that the RFC is not supported by the record or by a physical

RFC assessment conducted by a physician.  Finally, she argues that the ALJ erred

by failing to obtain evidence from a medical expert to clarify the nature and

12

severity of her impairments "despite explicit instruction from the Appeals Council

to do so." (Id. at 5.) The Commissioner opposes Plaintiff's motion, asserting that

she is entitled to a grant of summary judgment because substantial evidence

supports the ALJ's conclusions. I will address each argument in turn.

### 1.    The ALJ Did Not Err by Failing To Develop the Record.

Plaintiff asserts that the ALJ committed reversible error by failing to order a

psychological examination pursuant to 20 C.F.R. § 404.1529(b). She points to an

April 16, 2012 narrative by Plaintiff in which she indicates, among other things,

that she feels like "walls are closing in" on her, that she shakes back and forth, and

that she is afraid of dying from heart disease like her father did. (R. at 684-85.)

The ALJ referred to this statement in her opinion, but did not address Plaintiff's

psychological symptoms and decided her RFC based on her physical conditions

alone. According to Plaintiff, the information contained in the April 12, 2012

correspondence triggered the ALJ's duty to order a consultative examination to

explore the impact of Plaintiff's mental impairment on her RFC.

The Commissioner counters that the ALJ was not required to order a

consultative medical evidence because there was no objective evidence that

Plaintiff suffered from a mental impairment. Specifically, she points to 20 C.F.R.

§§ 404.1519a and 416.19a, which provide that the Agency "may purchase a

consultative examination" if it cannot get the information needed from the

claimant's medical evidence.  A consultative examination may be required to "try to resolve an inconsistency in the evidence, or when the evidence as a whole is insufficient to allow [the Agency] to make a determination or decision on [the] claim."  20 C.F.R. § 404.1519a(b).  Here, Defendant argues, there is no inconsistency to resolve by way of a consultative examination because there is no evidence in the record, outside of Plaintiff's description of her symptoms, that she suffers from morbid thoughts and anxiety caused by fear of her mortality.

Defendant's argument is well taken. It is Plaintiff's burden to establish that she suffers from a medically determinable impairment.  *See Bowen v. Yuckert*, 482 U.S. 137, 146 (1987).  Pursuant to the Social Security Act, "a physical or mental impairment must be established by medical evidence consisting of signs, symptoms, and laboratory findings, not only by your statement of symptoms."  20 C.F.R. § 404.1508; *see also* 20 C.F.R. § 404.1528(a) ("Symptoms are your own description of your physical or mental impairment. Your statements alone are not enough to establish that there is a physical or mental impairment.").

Plaintiff has failed to meet her burden to establish a medically determinable mental impairment.  A review of the record demonstrates that Plaintiff has not sought medical intervention for her mental health, a fact which she concedes.  (R. at 526.)  Accordingly, the ALJ could only rely on Plaintiff's statement of her mental health symptoms.  The ALJ did, in fact, refer to Plaintiff's statements in the

14

April 12, 2012 correspondence, but did not ultimately conclude that Plaintiff's mental health issues were in controversy; therefore a consultative examination was unwarranted.  (R. at 495-96.)  Substantial evidence supports this conclusion, including Plaintiff's testimony that she got along well with others (R. at 518) and her ability to successfully complete college courses with a GPA of 3.5 while working at the college to help prospective students to apply (R. at 515, 513).  In addition, Plaintiff did not claim a mental impairment as one of the bases for which she was entitled to benefits in her Disability Report.  (R. at 131.)  While the record reveals one incident in which Plaintiff suffered from anxiety, it was brought on by staying up all night to study for a test. (R. at 496 and 692.)

In sum, Plaintiff has failed to demonstrate that the ALJ could not get the information needed from the medical evidence, such that a consultative examination was necessary to resolve any inconsistencies.  Plaintiff did not apply for benefits on the basis of a mental disability, has never sought treatment for one, and the record evidences no such disability, yet she wants the Court to determine that the ALJ erred by failing to anticipate such a diagnosis here. The ALJ did not err in this respect and her conclusion is supported by substantial evidence.

### 2.    Plaintiff's RFC is Supported by Substantial Evidence.

Plaintiff's RFC is "the most [he or she] can still do despite the physical and mental limitations resulting from [his or] her impairments."  *Poe v. Comm'r of*

*Soc. Sec.*, 342 F. App'x 149, 155 (6th Cir. 2009); s*ee also* 20 C.F.R. §§

404.1545(a), 416.945(a).  The determination of Plaintiff's RFC is an issue reserved

to the Commissioner and must be supported by substantial evidence.  20 C.F.R. §§

404.1527(3), 416.927(e).  "'ALJs must not succumb to the temptation to play

doctor and make their own independent medical findings.'"  *Simpson*, 344 F.

App'x at 194 (6th Cir. 2009) (quoting *Rohan*, 98 F.3d at  970).

Pursuant to Social Security Rule 96-8p, the RFC assessment must include:

> [A] narrative discussion describing how the evidence supports each
> conclusion, citing specific medical facts (e.g., laboratory findings) and
> nonmedical evidence (e.g., daily activities, observations).    In
> assessing RFC, the adjudicator must discuss the individual's ability to
> perform sustained work activities in an ordinary work setting on a
> regular and continuing basis (i.e., 8 hours a day, for 5 days a week, or
> an equivalent work schedule), and describe the maximum amount of
> each work-related activity the individual can perform based on the
> evidence available in the case record. The adjudicator must also
> explain how any material inconsistencies or ambiguities in the
> evidence in the case record were considered and resolved.

S.S.R. 96-8-, 1996 WL 374184, at *6-7. "Although SSR 96–8p requires a

'function-by-function evaluation' to determine a claimant's RFC, case law does

not require the ALJ to discuss those capacities for which no limitation is alleged."

*Delgado v. Comm'r of Soc. Sec.*, 30 F. App'x 542, 547 (6th Cir. 2002).  Instead, the

ALJ "'need only articulate how the evidence in the record supports the RFC

determination, discuss the claimant's ability to perform sustained work-related

activities, and explain the resolution of any inconsistencies in the record.'" *Id.*

(quoting *Bencivengo v. Comm'r of Soc. Sec.,* No. 00–1995,  251 F.3d 153, slip op. at 5 (3d Cir. Dec. 19, 2000).

Here, Plaintiff asserts that the ALJ failed to properly evaluate her RFC and to support her finding with specific references to the record.  Plaintiff argues that the ALJ erred by assessing a sedentary RFC, because there was no medical opinion in the record supporting the finding, and because the State agency medical consultant opined that Plaintiff retained the RFC for light work.  In addition, she contends that the medical evidence is consistent with Plaintiff's complaints of fatigue and the ALJ failed to properly credit those statements.  I conclude that substantial evidence supports the ALJ's RFC analysis and conclusion.

The ALJ sufficiently articulated how the evidence in the record supports the RFC.  In making her decision, the ALJ identified and discussed Plaintiff's ongoing treatment with Dr. Gowda, as well as the opinions from State agency medical consultants Dr. Daniels, Dr. Thio, and Dr. Gouldman.  (R. at 29-30.)   She explained her decision to assess a sedentary RFC, which was *more restrictive* than the light RFC opined by the consultants, by giving consideration to Plaintiff's self-report of anemia and low energy levels, along with her cardiologist's confirmation that she suffered from some exercise intolerance.  Plaintiff's argument that the ALJ erred in assessing a *more restrictive* RFC than that opined by the State agency consultants is curious and unavailing.  *See Warren v. Comm'r of Soc. Sec.*, No. 13-

17

cv-13523, 2014 WL 3708565, at *4 (E.D. Mich. July 28, 2014) (affirming the

ALJ's RFC as supported by substantial evidence, in part because the ALJ assessed

a more restrictive RFC than that opined by the claimant's physicians).

Moreover, although Plaintiff argues that the ALJ failed to consider her

complaints of fatigue, tiredness, and drowsiness, a review of the ALJ's opinion

reveals ample consideration of Plaintiff's complaints, including her decision to

assess a more restrictive RFC based, in part, on Plaintiff's complaints of fatigue.

In addition, the ALJ considered Plaintiff's statements that she got tired after one to

two hours of working and that she napped daily, but also that she was generally

able to make it *until 4:30 in the afternoon* until she needed a nap.  (R. at 495-97.)

Furthermore, the ALJ found Plaintiff's statements concerning the intensity,

persistence, and limiting effects of her symptoms were less than credible, and

Plaintiff does not challenge that finding.  (R. at 496.)

Finally, substantial evidence supports the ALJ's RFC analysis and

conclusion because Plaintiff's reports of her symptoms and daily activities, along

with the objective medical evidence in the record, are consistent with a sedentary

RFC.  As support for her position, Plaintiff points to August 5, 2010, June 2, 2011,

and November 14, 2011 reports of shortness of breath, fatigue, and difficulty

walking.  However, after her September 2, 2011 Melody valve procedure, Plaintiff

reported that she was able to walk around and climb stairs with no complaints.  (R.

at 771.)  Further, a review of the November 14, 2011 visit with Dr. Gowda to which Plaintiff cites reveals that her complaints about shortness of breath and fatigability with exercise were made "over the past year or so."  (R. at 766.)  Dr. Gowda went on to note that, following the Melody valve placement, Plaintiff reported that she was "doing well," was able to "take part in regular activities," and was able to walk around.  (R. at 767.)  In addition, Plaintiff reported to Dr. Gowda in 2012 that she was doing "relatively well," and was able to take part in regular activities including her first year of college.  (R. at 696.)  Plaintiff reported that she was able to "keep up with her regular activities, except for tiredness at the end of the day," which is consistent with the ALJ's assessment that Plaintiff could make it until the end of a workday to take a nap.  (R. at 697.)  Dr. Gowda's physical examination revealed normal results.  (R. at 698.)  Additionally, in 2013, she reported to Dr. Gowda that she was doing well and taking part in regular activities. (R. at 692.)  Dr. Gowda's review of a recent echocardiogram revealed normal results, as did a chest fluoroscopy.  (R. at 692-93.)  The ALJ did not err in her RFC assessment.

### 3.     The ALJ did not Err by Failing to Obtain a Medical Expert.

Plaintiff argues that the Appeals Council's November 16, 2012 remand order specifically required the ALJ to obtain evidence from a medical expert to clarify the nature and severity of her impairments.  (DE 13 at 26.)  However, the Appeals

Council imposed no such requirement and the remand order reads in relevant part as follows: "Further, *if necessary*, obtain evidence from a medical expert to clarify the nature and severity of the claimant's impairments." (R. at 567 (emphasis added)). Plaintiff's characterization of the remand order is a gross exaggeration.

Further, as Defendant argues, the ALJ considered the expert medical opinions of Drs. Daniels, Thio, and Gouldman. (R. at 496, 224-231, 928-29, and 930-31.) Plaintiff does not demonstrate, or even attempt to argue that, despite these expert opinions, it remained necessary to obtain additional evidence from a medical expert. As such, I find no error with respect to the ALJ's compliance with the Appeals Council's remand order.

### G.   CONCLUSION

In sum, from a review of the record as a whole, the Undersigned concludes that substantial evidence supports the ALJ's decision denying benefits. Accordingly, it is **RECOMMENDED** that the Court **DENY** Plaintiff's motion for summary judgment, **GRANT** Defendant's motion for summary judgment, and **AFFIRM** the Commissioner of Social Security's decision.

### III.   PROCEDURE ON OBJECTIONS

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule

72.1(d).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1981).  Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation.  *Willis v. Sec'y of Health & Human Servs.*, 932 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1273 (6th Cir. 1987).  Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," and "Objection No. 2," *etc.*  Any objection must recite precisely the provision of this Report and Recommendation to which it pertains.  Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity.  Fed. R. Civ. P. 72(b)(2); E.D. Mich LR 72.1(d).  The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," *etc.*  If the Court determines that any objections are without merit, it may rule without awaiting the response.

Dated: January 22, 2016          s/Anthony P. Patti
                                 Anthony P. Patti
                                 UNITED STATES MAGISTRATE JUDGE

I hereby certify that a copy of the foregoing document was sent to parties of record
On January 22, 2016, electronically and/or by U.S. Mail.

                s/Michael Williams
                Case Manager for the
                Honorable Anthony P. Patti