UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

HALAH FADHL MOSED,

        Plaintiff,                              Civil Action No. 14-CV-14357

vs.                                                HON. MARK A. GOLDSMITH

COMMISSIONER OF SOCIAL
SECURITY,

        Defendant.
_____/

**<u>OPINION AND ORDER (1) OVERRULING PLAINTIFF'S OBJECTIONS (Dkt. 19), (2) ACCEPTING THE RECOMMENDATION OF THE MAGISTRATE JUDGE (Dkt. 18), (3) DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT (Dkt. 13), and (4) GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (Dkt. 15)</u>**

## I.  INTRODUCTION

In this social security case, Plaintiff Halah Fadhl Mosed appeals from the final determination of the Commissioner of Social Security that she is not disabled and, therefore, not entitled to disability benefits. The matter was referred to Magistrate Judge Anthony P. Patti for a Report and Recommendation ("R&R"). The parties filed cross-motions for summary judgment (Dkts. 13, 15), and Magistrate Judge Patti issued an R&R recommending that the Court grant Defendant's motion for summary judgment and deny Plaintiff's motion for summary judgment (Dkt. 18). Plaintiff filed objections to the R&R (Dkt. 19); Defendant did not file a response.

For the reasons that follow, the Court overrules Plaintiff's objections to the Magistrate Judge's recommendation, and accepts the recommendation contained in the Magistrate Judge's R&R. Defendant's motion is granted and Plaintiff's motion is denied. The final decision of the Commissioner is affirmed.

1

## II.  LEGAL STANDARD

The Court reviews de novo those portions of the R&R to which a specific objection has been made.  See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).  Under 42 U.S.C. § 405(g), this Court's "review is limited to determining whether the Commissioner's decision 'is supported by substantial evidence and was made pursuant to proper legal standards.'"  Ealy v. Comm'r of Soc. Sec., 594 F.3d 504, 512 (6th Cir. 2010) (quoting Rogers v. Comm'r of Soc. Sec., 486 F.3d 234, 241 (6th Cir. 2007)).  "Substantial evidence is 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"  Lindsley v. Comm'r of Soc. Sec., 560 F.3d 601, 604 (6th Cir. 2009) (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)).  In determining whether substantial evidence exists, the Court may "look to any evidence in the record, regardless of whether it has been cited by the [Administrative Law Judge ("ALJ")]."  Heston v. Comm'r of Soc. Sec., 245 F.3d 528, 535 (6th Cir. 2001).  "[T]he claimant bears the burden of producing sufficient evidence to show the existence of a disability."  Watters v. Comm'r of Soc. Sec. Admin., 530 F. App'x 419, 425 (6th Cir. 2013).

## III.  ANALYSIS

Plaintiff purports to offer two objections to the Magistrate Judge's R&R: (i) the Magistrate Judge erred in finding that the ALJ's decision was supported by substantial evidence; and (ii) the Magistrate Judge erred in finding that the ALJ's failure to obtain the opinion of a medical expert was supported by the record.  See Obj. at 2, 4.  The Court addresses each in turn, concluding that both lack merit.

### A.  Objection One

Plaintiff actually offers a number of distinct points under the umbrella of her first objection; however, none of them is availing.

Plaintiff first submits that both the ALJ and the Magistrate Judge "misconstrued medical evidence and testimony that ultimately, resulted in an inadequate [residual functional capacity ("RFC")] to address Plaintiff's severe medical condition." Obj. at 3. Plaintiff does not explain which medical evidence or testimony the ALJ and/or the Magistrate Judge misconstrued. Although not entirely clear, it seems that Plaintiff's argument is that the ALJ erroneously relied on Plaintiff's performance of part-time work instead of the medical evidence in support of her determination that Plaintiff could perform a restricted range of sedentary work. Id. Plaintiff asserts that this was "contrary to the Rules that specifically state that the residual functional capacity is a medical assessment of what an individual can do in a work setting" despite the individual's functional limitations caused by medically determinable impairments. Id.

To the extent that Plaintiff challenges the ALJ's or the Magistrate Judge's characterization or interpretation of the evidence of record, the Court deems such an objection waived. Plaintiff has not provided any factual support or further analysis in support of this contention, and it is not the role of the Court to make an argument on her behalf. See McPherson v. Kelsey, 125 F.3d 989, 995-996 (6th Cir. 1997) ("[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived. It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to . . . put flesh on its bones."); Deguise v. Comm'r of Soc. Sec., No. 12-10590, 2013 WL 1189967, at *7 (E.D. Mich. Feb. 19, 2013) ("[P]laintiff cannot simply make the claim that the ALJ erred . . . while leaving it to the Court to scour the record to support this claim."), report and recommendation adopted by 2013 WL 1187291 (E.D. Mich. Mar. 22, 2013); Crocker v. Comm'r of Soc. Sec., No. 1:08-CV-1091, 2010 WL 882831, at *6 (W.D. Mich. Mar. 9, 2010) ("This

3

court need not make the lawyer's case by scouring the party's various submissions to piece together appropriate arguments.").

As to Plaintiff's second point, she offers no authority (aside from a reference to the "Rules") that an RFC is a "medical assessment" that must be based only on the medical evidence of record. Nor can she; under the regulations, an RFC is assessed "based on all the relevant evidence in [a claimant's] case record." 20 C.F.R. § 404.1545(a)(1) (emphasis added). See also id. § 404.1545(a)(3) ("We will assess your residual functional capacity based on all of the relevant medical and other evidence." (emphasis added)); id. § 416.945(e) ("In assessing the total limiting effects of your impairment(s) and any related symptoms, we will consider all of the medical and nonmedical evidence." (emphasis added)). This includes, "descriptions and observations of your limitations from your impairment(s), including limitations that result from your symptoms . . . provided by you, your family, neighbors, friends, or other persons." Id. § 404.1545(a)(3). Moreover, when evaluating the effect of a claimant's symptoms, like fatigue, the Commissioner is required to consider evidence beyond the medical record, including evidence of daily activities, precipitating and aggravating factors, measures used to relieve the symptoms, and any other factors concerning the functional limitations caused by the symptoms. See id. § 404.1529 (a), (c)(3). Accordingly, it was entirely appropriate for the ALJ to consider Plaintiff's ability to perform part-time work when evaluating Plaintiff's symptoms for purposes of developing an RFC.

Plaintiff also argues that the ALJ exceeded her scope of authority in compiling an RFC that is not consistent with any RFC offered by a physician. Obj. at 3.[1] As an initial matter, an RFC determination is an administrative finding reserved to the Commissioner. See 20 C.F.R.

---

[1] This argument, too, crosses the threshold of waiver. Plaintiff fails entirely to identify, let alone explain, the alleged inconsistencies between the ALJ's RFC and any physician-provided RFC contained in the record. Obj. at 3.

4

§ 416.927(d)(2). Accordingly, no special significance or deference is afforded to any physician opinion on this issue. Id. § 416.927(d)(3); see also Soc. Sec. R. 96-5P, 1996 WL 374183, at *2 (July 2, 1996). "[T]o require the ALJ to base her RFC finding on a physician's opinion, 'would, in effect, confer upon the treating source the authority to make the determination or decision about whether an individual is under a disability, and thus would be an abdication of the Commissioner's statutory responsibility to determine whether an individual is disabled.'" Rudd v. Comm'r of Soc. Sec., 531 F. App'x 719, 728 (6th Cir. 2013) (quoting Soc. Sec. R. 96-5P).

Regardless, the ALJ employed an RFC that was on par with or more restrictive than those offered by the state agency medical consultants. See Administrative Record ("A.R.") at 224-231 (RFC assessment of Dr. Daniels, M.D., recommending exertional restrictions consistent with "light" work); id. at 928-929 (medical consultant review by Richard Thio, agreeing with the physical RFC dated March 9, 2012 and recommended at the initial administrative level); id. at 930-931 (medical consultant review by Dr. Gouldman, M.D., agreeing with the physical RFC dated March 9, 2012 and recommended at the initial administrative level); id. at 573-574 (disability determination made at the initial administrative level, dated March 9, 2012, opining that Plaintiff is capable of performing sedentary work). Indeed, the ALJ restricted Plaintiff to a modified subset of sedentary-level work based on Plaintiff's testimony concerning her fatigue and limited ability to stand and/or walk. Id. at 496-497. Accordingly, Plaintiff's argument that the ALJ erred in failing to adhere to an RFC as offered by a physician is without merit.

Plaintiff's final point under this first objection argues that the Magistrate Judge and the ALJ erred in concluding that Plaintiff could perform sedentary work because Plaintiff's medical records from the Children's Hospital of Michigan substantiate her numerous complaints of fatigue during the day despite living a sedentary lifestyle. Obj. at 3. From this, Plaintiff

5

contends that "the medical evidence as a whole supports her inability to perform sedentary work," and "[h]ad the ALJ reviewed the medical records from Children's Hospital of Michigan, she would have no other conclusion to make other than that Plaintiff was incapable of performing even sedentary work." Id. at 3-4.

This argument misapprehends the limited nature of this Court's review. The substantial evidence standard is not an onerous one. See McClanahan v. Comm'r of Soc. Sec., 474 F.3d 830, 833 (6th Cir. 2006) ("Substantial evidence is more than a scintilla of evidence but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."). Indeed, "[t]he findings of the Commissioner are not subject to reversal merely because there exists in the record substantial evidence to support a different conclusion." Buxton v. Halter, 246 F.3d 762, 772 (6th Cir. 2001). Rather, there exists a "zone of choice" within which the Commissioner is free to act without interference. Id. at 773.

The records from Children's Hospital are numerous and appear to span from November 2003 through March 2013. See A.R. at 179-187, 314-392, 393-452, 689-758, 759-849. Other than to summarily assert that the records support Plaintiff's complaints of fatigue, thus demonstrating her inability to engage in sedentary work, Plaintiff presents no breakdown or summary of the information in the medical records. Nor does she provide any citation to specific records that may substantiate her claims. The Court reiterates that it is not its role to comb through the record for evidence to support Plaintiff's argument.

Nonetheless, while the record does reflect consistent complaints of excessive tiredness or fatigue, there is sufficient evidence even within the Children's Hospital records for the ALJ to conclude that Plaintiff was capable of performing sedentary work. For instance, earlier records reflect that Plaintiff complained of occasional fatigue or was known to tire easily, more so than

6

her peers. E.g., A.R. at 330-331, 337-338, 343, 359, 440. However, many of these records also indicate that Plaintiff was able to complete regular activities, including taking part in regular gym classes and playing sports such as basketball, soccer, and volleyball. Id. at 181, 330-331, 337-338, 425-426, 440. More recent medical notes, beginning in 2010, reflect more consistent complaints of excessive tiredness, easy fatigability (usually with activity), and frequent napping. Id. at 398, 401, 403-405, 699, 703, 708-709, 712-713, 782, 814. However, as the Magistrate Judge noted, Plaintiff underwent a heart procedure around September 2, 2011, and appeared to improve thereafter. R&R at 18-19. For example, a November 14, 2011 follow-up appointment observes that Plaintiff was "doing well," and was "able to take part in regular activities at home and at college" without shortness of breath or other complaints. A.R. at 699-700; see also id. at 704 (follow-up appointment dated September 12, 2011, observing that Plaintiff was "doing reasonably well," including being "back to her baseline, able to walk around," and "able to climb stairs like before"). The most recent reports from 2012 and 2013 indicate that Plaintiff was, again, doing well and taking part in regular activities, including attending and keeping up with college activities as well as an on-campus job. See id. at 692, 695-697. Moreover, Plaintiff's most recent reports of fatigue were either linked with long periods of standing, id. at 692, or otherwise occurred at the end of the day, id. at 696-697.

These reports are consistent with Plaintiff's own testimony that she attends classes and works part-time. Moreover, she appeared to be succeeding in her studies, even as a full-time student, as evidenced by her 3.5 GPA. Id. at 515; see also id. at 523 (testifying that she was able to complete all four classes while working on campus). Plaintiff explained that her job was tiring, because she would have to frequently get up and walk across a large room to assist students and then return to her seat. Id. at 519. Moreover, when asked why she was disabled,

7

Plaintiff responded, in part, that she could not walk a lot and could not lift anything; standing was also problematic for her. Id. at 515-516, 521. Plaintiff also testified that online classes were much easier for her, because she could complete all of the work at home, and she would not have to carry around all of her books. Id. at 526. And even while working and attending classes on campus, it appears that Plaintiff was able to make it through almost a full day before she needed to nap. See id. at 522 (testifying that she would typically need to nap by 3:00 or 4:00 in the afternoon).

Taking into consideration Plaintiff's medical reports and her testimony, it was reasonable for the ALJ to conclude that Plaintiff was capable of performing full-time sedentary work, notwithstanding her complaints of excessive tiredness and fatigue. First, as the Magistrate Judge stated, the ALJ did not find Plaintiff's testimony as to the extent of her limitations, i.e., her fatigue, fully credible. Id. at 496; R&R at 18. Plaintiff does not challenge that credibility determination. Even so, the ALJ did give due consideration to Plaintiff's testimony regarding her fatigue, and thoroughly explained that restricting Plaintiff to sedentary work, as opposed to the light-level work that characterized her on-campus job, should ease Plaintiff's complaints of tiredness and fatigue so as to permit her to complete a full workday and workweek. A.R. at 497. Thus, contrary to Plaintiff's assertions, the ALJ carefully considered and weighed Plaintiff's complaints of fatigue in making the disability decision, and the record as a whole (including the Children's Hospital records) provides substantial evidence for the ALJ's conclusion that Plaintiff could perform full-time sedentary work.

### B. Objection Two

Plaintiff's second objection contends that the Magistrate Judge erred in finding that the ALJ's failure to obtain the opinion of a medical expert was supported by the record. Obj. at 4.

Plaintiff states that the Appeals Council issued a remand order "requiring" the ALJ to "obtain evidence from a medical expert to clarify the nature and severity of the Plaintiff's impairments," and takes issue with the ALJ's failure to subject Plaintiff to a consultative examination upon remand. Id. As the Magistrate Judge found, the remand order did not, in fact, require the ALJ to obtain additional evidence from a medical expert; rather, it stated, "if necessary, obtain evidence from a medical expert to clarify the nature and severity of the claimant's impairments." See R&R at 19-20; see also A.R. at 567.

Nonetheless, Plaintiff claims that a consultative examination was necessary because "the opinions of the doctors relied upon by the ALJ were all based upon examinations done far before the order for remand was entered." Obj. at 5. This argument is not well taken.

The need for additional expert medical evidence is not rendered necessary simply because the prior expert medical evidence was developed before the remand order. If this were true, then the Appeals Council could have required the ALJ to obtain additional expert medical evidence, rather than leaving the decision to the ALJ's discretion. In any event, the ALJ did obtain and consider some additional expert medical evidence in the form of medical records from Plaintiff's treating physicians dated after the ALJ's initial denial of disability benefits. The remand order did not specify what kind of expert medical evidence the ALJ should consider if the ALJ was inclined to do so. And Plaintiff presents no argument for why a consultative examination, specifically, was necessary in this instance when records from Plaintiff's own treating physicians were both made available and considered. Accordingly, the Court agrees with the Magistrate Judge that the ALJ did not fail to comply with the Appeals Council's remand order.

## IV. CONCLUSION

For the above-stated reasons, the Court overrules Plaintiff's objections (Dkt. 19) and accepts the recommendation contained in the Magistrate Judge's R&R (Dkt. 18). Plaintiff's motion for summary judgment (Dkt. 13) is denied and Defendant's motion for summary judgment (Dkt. 15) is granted.

SO ORDERED.

Dated: March 21, 2016  s/Mark A. Goldsmith
Detroit, Michigan  MARK A. GOLDSMITH
 United States District Judge

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on March 21, 2016.

 s/Karri Sandusky
 Case Manager